IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| International Brotherhood of Teamsters, ) | |
| Local Union No. 507, AFL-CIO ) | |
| ) | |
| ) | Case No. 1:04CV0896 |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Ann Aldrich |
| ) | |
| Store Maintenance Services, Inc. ) | MEMORANDUM AND |
| ) | ORDER |
| Defendant. ) | |

In this labor arbitration case, plaintiff International Brotherhood of Teamsters, Local Union No. 507, AFL-CIO ("Teamsters") accused defendant Store Maintenance Services, Inc. ("SMS") of violating Articles X, XII, and XXI of the collective bargaining agreement (CBA) by failing to pay its employees severance in accordance with the CBA. The dispute arises over the calculation of the employees' length of service. In accordance with the CBA, the parties submitted the dispute to arbitration, and the arbitrator, Professor Alan Ruben, ruled in favor of the Teamsters.

The Teamsters filed a motion for summary judgment (Docket no. 21 ) seeking confirmation and enforcement of the arbitration award while SMS moved to vacate the award (Docket No. 23). For the following reasons, the court grants the Teamsters motion for summary judgement, and confirms and enforces the arbitration award.

**I. BACKGROUND**

Riser Foods Company ("Riser"), a subsidiary of Giant Eagle, Inc., operated a supermarket

chain including associated warehouse and transportation services and facilities. Approximately 500 to 600 of Riser's employees formed a Bargaining Unit represented by Teamsters Local 507. Fifteen members were employed by Riser in its repair and maintenance division.

The role of "seniority" was explained in Article V of the Teamsters-Riser CBA:

> 1. Each employee shall have Plant seniority equal to his length of continuous service with the Employer dating from the date of the last employment by the Employer, except any employee rehired within one year after his last termination date shall be credited with his previous amount of accumulated seniority as of his last termination date plus seniority accrued during layoff and shall continue to retain all seniority rights.
>
> 2. Layoffs, preference as to shifts, vacation periods and the advancement of employees to higher classification shall be made in accordance with plant seniority, but employees must be qualified for advancement to higher classification regardless of seniority.

Article XXI of the agreement outlined the calculation of severance pay for laid-off employees which depended on their years of service:

> 1. It is agreed that each employee who is displaced from his employment by reason of lay-off, closing or twelve (12) months prior to the closing of the entire plant, branch, warehouse, loading dock, terminal, trucking operation, agency or store, or department thereof, shall be compensated for such displacement provided he has been actively employed by the 'Employer' for a period of at least three (3) years. An eligible employee's compensation for his displacement shall be on the basis of forty (40) hours of severance pay (at his straight time hourly rate of pay) for each year of employment.

In 1999, Riser discontinued its in-house store repair and maintenance. Riser contracted with SMS for these services under a 3 year contract commencing in May, 2000 and terminating on April 30, 2003. Rather than laying-off the 15 Riser employees within the repair and maintenance classification, SMS agreed to hire them with the understanding that a new CBA would be negotiated between the Teamsters and SMS. According to the Teamsters, and the arbitrator's findings, the union consented to this agreement with the understanding that the 15 members would retain their seniority and benefits. In fact, SMS records

indicated that the 15 "new" employees received their benefits based on their original hire dates with their former employer, Riser. The new Teamsters-SMS CBA adopted the same language as the previous CBA with Riser.

In April, 2003 Riser did not renew its contract with SMS. As a result, SMS laid-off the 15 teamsters effective April 30, 2003. A dispute arose as to the nature and extent of SMS's obligation to pay severance to the laid-off employees. The Teamsters argued that the severance pay should be based on the employees' original hire dates and seniority with Riser. SMS argued that the language of the CBA only required them to pay severance based on the employees' hire dates with SMS.

The Teamsters filed a grievance in May, 2003. The parties were unable to resolve the grievance and the Teamsters submitted the issue to arbitration. After hearing oral argument and considering the evidence, in February, 2004, the arbitrator found in favor of the Teamsters. Professor Ruben found that the Teamsters and SMS mutually intended the 15 employees to retain seniority based on their years of service with Riser, and that both the Teamsters and SMS had adhered to a standard-form CBA that did not accurately reflect the mutual intent of the parties at the time of contract formation. The arbitrator reformed the contract and ordered SMS to pay the appropriate amounts to the laid-off employees. SMS's refusal to pay the severance benefits awarded by the arbitrator led to the instant action.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must review the evidence and draw all reasonable

inferences in favor of the nonmoving party. *See Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union,* 357 F.3d 546, 551; *DBM Technologies Inc. v. United Food and Commercial Workers Int'l Union,* 257 F.3d 651, 655 (6th Cir. 2001). The court is not to weigh the evidence and determine the truth of the matter, but rather is to determine whether there is a genuine issue for trial. *Id.*

The standard of review for labor arbitration awards is "one of the narrowest standards of judicial review in all of American jurisprudence." *DBM Technologies,* 257 F.3d at 656 (quoting *Lattimer-Stevens Co. V. United Steelworkers of Am., AFL-CIO, Dist. 27, Sub-Dist 5,* 913 F.2d 1166 (6th Cir. 1990)). When a collective bargaining agreement stipulates that both parties will submit a dispute to arbitration, "an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract."*United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37-38 (1987).

Courts have held that an arbitrator's award is valid so long as the award "draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice". *DBM Technologies,* 257 F.3d at 656. *See also, Misco, Inc.,* 484 U.S. at 38; *Sterling China,* 357 F.3d at 556. An arbitrator's award may fail to be drawn from the essence of the CBA when the award: (1) conflicts with express terms of the agreement; (2) imposes additional requirements not expressly provided for in the agreement; (3) is not rationally supported or derived from the terms of the agreement; and (4) is based on general considerations of fairness and equity rather than the exact terms of the agreement. *See Sterling China,* 357 F.2d at 556; *Way Bakery v. Truck Drivers Local No. 164,* 363 F.3d 590, 593 (6th Cir. 2004); *DBM Technologies***,** 257 F.3d at 656.

This court rejects SMS's argument that Professor Ruben's award did not arise out of the essence of the CBA. SMS argues that Professor Ruben's interpretation of the CBA violated the "plain meaning rule" because the preamble to the CBA clearly defined SMS as the "employer". However, the arbitrator noted that there may be instances when the language of a contract may seem clear and concise on its face, but in practice, betrayed the mutual intent of the parties. The arbitrator adopted the Restatement (Second) of Contracts view which explains:

> It is sometimes said that extrinsic evidence cannot change the plain meaning of a writing, but meaning can almost never be plain except in a context...Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties...

Section 212 cmt. b (1981).

Professor Ruben further adopted the commonly accepted principle of arbitration which allows for an exception to the plain meaning rule in cases of mutual mistake. He accurately noted that when a contract does not correspond with the actual intent of the parties, "an arbitrator may reform the contract to reflect the true intent of the parties." Arbitration award at 30 (quoting Elkouri & Elkouri, *How Arbitration Works*, 439 (Alan Miles Ruben ed., 6th ed. 2003).

The arbitrator concluded that the language in Article XXI of the CBA demonstrated an instance of "mutual mistake". Professor Ruben concluded that the Teamsters and SMS mutually intended to credit the fifteen employees with service based on their original hire dates with Riser. Furthermore, because the Teamsters and SMS relied on a boilerplate agreement form, their intentions at the time of contracting were betrayed by the language of the CBA. Therefore, the arbitrator correctly concluded that it was within his discretion to modify the CBA to accurately reflect the mutual intent of the Teamsters and SMS at the time of contracting.

This court is bound to accept an arbitrator's factual and contractual interpretation in a labor arbitration dispute unless the award does not reflect the essence of the collective bargaining agreement. This court concludes that the arbitrator carefully reviewed the information before him, applied the appropriate legal principles, and determined that both parties agreed during contract negotiations to credit the fifteen employees with their years of service at Riser. Therefore, based on the arbitrator's factual finding, it may be concluded that, in part, the "essence" of the CBA was that severance pay be calculated based on the years of service with Riser and SMS. Therefore, Professor Ruben's reformation of the agreement to reflect the mutual intent of the parties did arise from the essence of the CBA. For this reason, confirmation and enforcement of the arbitration award is appropriate.

In accordance with Article XIV(5) of the Teamsters-SMS CBA, the arbitrator's award is final and binding upon all parties. Therefore, because this court has concluded that Professor Ruben drew his conclusion from the essence of the CBA, there is no genuine issue of material fact, and summary judgment is appropriate.

### IV. CONCLUSION

For the foregoing reasons, this Court hereby grants the Teamsters' motion and enters summary judgment in favor of the plaintiffs.

This order is final and appealable.

IT IS SO ORDERED.

        /s/ Ann Aldrich  
        ANN ALDRICH  
**Dated**: July 20, 2005        UNITED STATES DISTRICT JUDGE